Robyn C. Crowther (SBN 193840)
*rcrowther@steptoe.com*
**STEPTOE LLP**
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 439-9400
Facsimile: (213) 439-9599

John Caracappa (D.C. SBN 476543) (pending pro hac vice)
*jcaracappa@steptoe.com*
Stanley Kuo (D.C. SBN 1024486) (pending pro hac vice)
*skuo@steptoe.com*
Katherine Cappaert (D.C. SBN 1019326) (pending pro hac vice)
*kcappaert@steptoe.com*
Heather Hildreth (D.C. SBN 90005109) (pending pro hac vice)
*hhildreth@steptoe.com*
**STEPTOE LLP**
1330 Connecticut Avenue NW
Washington, D.C. 20036
Telephone: (202) 429 3000

Attorneys for Plaintiffs, AIDOT INC. AND
SHENZHEN AIDOT IOT TECHNOLOGY CO., LTD.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AIDOT INC. and SHENZHEN AIDOT IOT TECHNOLOGY CO., LTD. <br><br> Plaintiffs, <br><br> vs. <br><br> STINGRAY IP SOLUTIONS LLC, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs AiDot Inc. and Shenzhen AiDot IOT Technology Co., Ltd. ("Shenzhen AiDot") (collectively, "AiDot"), by and through its attorneys, files this Complaint against Stingray IP Solutions LLC ("Stingray") as follows:

1

**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL**

# NATURE OF ACTION

1. This is an action for declaratory judgment of non-infringement and invalidity of U.S. Patent Nos. 7,224,678 (the "'678 patent"), 7,440,572 (the "'572 patent"), 7,441,126 ("the "'126 patent"), and 7,616,961 ("the "'961 patent") (collectively, the "Patents-In-Suit," attached as Exhibits 1-4, respectively) against Stingray, pursuant to the Declaratory Judgment Act, 28 U.S.C §§ 2201-02, and the patent laws of the United States, 35 U.S.C. § 100 et seq., and for other relief the Court deems just and proper.

2. AiDot requests this relief because Stingray has filed a complaint in the Eastern District of Texas ("E.D.Tex."), Civil Action No. 2:23-cv-00499-JRG-RSP (consolidated with Civil Action No. 2:23-cv-00503-JRG-RSP) against Leedarson IOT Technology Inc., and Leedarson Lighting Co., Ltd. (collectively, "Leedarson"), claiming that AiDot and/or certain products manufactured by AiDot infringe the patents. A true and correct copy of Stingray's complaint against Leedarson is attached as Exhibit 5 ("E.D.Tex. Complaint"). Stingray did not name AiDot Inc., a California corporation, as a Defendant, and instead filed suit in E.D.Tex. However, in its Complaint, Stingray claims that AiDot Inc. is an alter ego of Leedarson, and that the manufacture, importation, distribution, offer for sale, or sale of certain devices that use Wi-Fi and/or ZigBee communication protocols, at least some of which are manufactured by Shenzhen AiDot, infringe the patents. These devices include smart lighting, security cameras, connected modules, wireless alarm and/or home automation gateways, kitchen appliances, keypads, sensors, house appliances, energy management, thermostats, and related accessories and software. Stingray's examples include AiDot Mujoy Matter Version BR30 WiFi Smart Flood Light Bulb, AiDot Linkind Smart Color Changing Solar Pathway Lights, AiDot Orein LED Smart Motion Sensor Outdoor Flood Light, AiDot OREiN A19 Matter Smart Reliable WiFi Light Bulbs, AiDot Winees L1 Outdoor Wireless Solar Security Camera, AiDot Winees M2 Pro 2K Indoor Security Camera, AiDot Winees F2/F2 Pro, AiDot Winees Baby Monitor 1080P Indoor Camera with Night Vision, AiDot Welov 8-Quart Air Fryer with Visible Cooking Window, AiDot Linkind PIR Motion Sensor, AiDot Welov P200S/P200 PRO(WIFI) Air

Purifier, AiDot Welov D300 WiFi Smart Aroma Diffuser, AiDot Welov H500D/ H500 PRO(WIFI) Long-Lasting Humidifier, AiDot Welov S300 Smart Body Fat Scale with BIA Technology, AiDot Welov R300 BLE Smart Jump Rope with 4 Modes, and related accessories and software, such as the AiDot app (all collectively referred to as the "Accused Products.")

3. An actual and justiciable controversy therefore exists under 28 U.S.C. §§ 2201-2202 between Stingray and AiDot as to whether AiDot is infringing or has infringed the Patents-In-Suit and whether the Patents-In-Suit are valid.

## THE PARTIES

4. Plaintiff AiDot Inc. is a corporation organized and existing under the laws of California. AiDot Inc. has a principal place of business at 8605 Santa Monica Blvd #30327 West Hollywood, CA 9006.

5. Plaintiff Shenzhen AiDot IOT Technology Co., Ltd. ("Shenzhen AiDot") is a corporation organized and existing under the laws of China. Shenzhen AiDot has a principal place of business at Room 3901, Tower C, Building 1, Block 1, Chuangzhi Yuncheng, Liuxian Avenue, Xili, Nanshan District, Shenzhen, Guangdong Province, China.

6. Upon information and belief, Defendant Stingray IP Solutions, LLC is a Texas limited liability company, located at 6136 Frisco Sq. Blvd., Suite 400, Frisco, TX 75034.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

8. This Court has personal jurisdiction over Stingray because Stingray has directed and continues to direct acts to this District, including acts pertaining to the Patents-In-Suit. For example, Stingray has purposefully directed licensing and enforcement

1  activities related to the Patents-In-Suit in the Central District of California. Although
2  Stingray is registered as a Texas limited liability company, the relevant personnel of
3  Stingray and its alter ego parent entity, Acacia Research Group, LLC ("Acacia"), reside
4  primarily in the Central District of California. In addition, Stingray is currently asserting
5  infringement allegations for at least some of the patents-in-suit in the Central District of
6  California. *See Stingray IP Solutions, LLC v. TP-Link Technologies Co., Ltd. et al*, 2-22-
7  cv-07571 (CDCA). For these reasons and for those stated below, Stingray has continuous
8  and systematic contacts within the State of California, including this District, and has
9  purposefully directed business activities into and in this District.

10        9.    For example, on information and belief, Marc Booth is not only Stingray's
11  CEO but the Chief IP Officer of Acacia and resides in the Central District of California.
12  Exs. 7, 8. On information and belief, Marc Booth signs, in California, assignment
13  documents on behalf of Stingray for the Patents-In-Suit filed with the USPTO. *E.g.*, Ex.
14  6. In particular, Stingray acquired the patents-in-suit from its California parent Acacia,
15  and Marc Booth signed for both the assignor Acacia and for the assignee Stingray. Ex. 6.
16  On information and belief, as Chief IP Officer, Marc Booth is also responsible for licensing
17  patents owned by Acacia and its subsidiaries, which would include the Patents-In-Suit. Ex.
18  8.

19        10.   On information and belief, Evan W. Woolley, as Vice President of
20  Licensing for Acacia, initiates pre-litigation licensing discussions about patents owned by
21  Acacia's subsidiaries, which includes the Patents-In-Suit. *See Atlas Global Technologies*
22  *LLC v. Sercomm Corporation*, Civil Action No. 6:21-cv-818, Dkt. 33-8, Ex. H to Atlas's
23  First Amended Complaint (Ex. 9). On information and belief, Evan W. Woolley sends
24  these letters from and resides in the Central District of California. Exs. 9, 10.

25        11.   Before Woolley, on information and belief, Eric Lucas, former Senior Vice
26  President of Licensing and Litigation for Acacia, engaged in pre-litigation licensing
27  discussions and/or infringement warnings on behalf of Stingray, including for at least some
28  of the Patents-In-Suit. *See Signify North America Corporation v. Stingray IP Solutions,*

1 *LLC*, 3-21-cv-11989 (DNJ), Dkt. 1 (Complaint) at ¶ 15.  On information and belief, Eric Lucas resided in Newport Beach, CA while employed at Acacia and sent these communications from California.  Ex. 12.

12. Jennifer Graff, who is listed on Stingray's certificate of incorporation as its organizer, lists the Irvine, California office of Acacia as her address. Ex. 10.

13. Stingray accuses AiDot Inc., of infringing the Patents-In-Suit, and AiDot Inc. has a registered agent in West Hollywood, CA.  Ex. 5, ¶¶ 2-3.

14. For the foregoing reasons, this Court has personal jurisdiction over Stingray, and the venue is proper, because Stingray has more than sufficient minimum contacts with California, including those within this District, and has purposefully availed itself of the benefits of California law, including within this District, such that this declaratory judgment action meets the requirements of California's long-arm statute and the U.S. Constitution's due process clause.  Venue is also proper in this Court.  A substantial part of the events giving rise to the claims alleged in this Complaint occurred in the Central District of California.  In addition, Stingray maintains a regular and established place of business in this District by having key employees, such as Marc Booth and Evan Woolley, routinely operate from their Acacia California offices, and Stingray's alter-ego parent company Acacia maintains a regular and established place of business in this District. Stingray is also subject to the Court's personal jurisdiction with respect to this civil action.

15. A substantial controversy of sufficient immediacy and reality exists between the parties to warrant the issuance of a declaratory judgment. Stingray has filed a complaint in the E.D.Tex., alleging that AiDot and products it manufactures directly and indirectly infringe claims of each of the Patents-In-Suit through the sale for importation, importation, and/or sale within the United States after importation of the Accused Products. Exhibit 5 at ¶¶ 3, 5, 7-9, 12, 14-15, 32-50, 58-64, 72-75, 80-82, 90-93, 96-99, 106-108, 113-115.  AiDot denies infringement of the claims of the Patents-In-Suit.

# FACTUAL BACKGROUND

## PATENTS-IN-SUIT

16. U.S. Patent No. 7,224,678 (the "'678 Patent"), entitled "Wireless local or metropolitan area network with intrusion detection features and related methods," and attached hereto as Exhibit 1, states on its cover that it was issued on May 29, 2007 to named inventor Thomas Jay Billhartz of Melbourne, FL. The '678 Patent also lists Harris Corporation of Melbourne, FL as the initial assignee. On information and belief, the '678 Patent is currently assigned to Stingray IP Solutions LLC.

17. U.S. Patent No. 7,440,572 (the "'572 Patent"), entitled "Secure wireless LAN device and associated methods," and attached hereto as Exhibit 2, states on its cover that it was issued on October 21, 2008 to named inventors Russell Dellmo of Palm Bay, FL, James Bergman of Melbourne, FL, and David W. Hall of Satellite Beach, FL. The '572 Patent also lists Harris Corporation of Melbourne, FL as the initial assignee. On information and belief, the '572 Patent is currently assigned to Stingray IP Solutions LLC.

18. U.S. Patent No. 7,616,961 (the "'961 Patent"), entitled "Allocating channels in a mobile ad hoc network," and attached hereto as Exhibit 3, states on its cover that it was issued on November 10, 2009 to named inventor Tom Billhartz of Melbourne, FL. The '961 Patent also lists Harris Corporation of Melbourne, FL as the initial assignee. On information and belief, the '961 Patent is currently assigned to Stingray IP Solutions LLC.

19. U.S. Patent No. 7,441,126 (the "'126 Patent"), entitled "Secure wireless LAN device including tamper resistant feature and associated method," and attached hereto as Exhibit 4, states on its cover that it was issued on October 21, 2008 to named inventors Russell Dellmo of Palm Bay, FL, James Bergman of Melbourne, FL, and David W. Hall of Satellite Beach, FL. On information and belief, the original assignee was Harris Corporation of Melbourne, FL. Stingray IP Solutions LLC purports to own the

6
**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL**

'126 Patent, but on information and belief, Lionra Technologies Ltd. may own the '126 Patent.

## DISPUTE BETWEEN AIDOT AND STINGRAY
## CONCERNING THE PATENTS-IN-SUIT

20. On October 24, 2023, Stingray filed the E.D.Tex. Complaint alleging AiDot and products it manufactures purportedly infringe certain claims of the Patents-In-Suit. *E.g.*, Ex. 5 at ¶¶ 2-3, 7-9, 12-15, 21, and 32. Stingray's E.D.Tex. Complaint alleges that the Accused Products purportedly infringe "directly and/or indirectly." Ex. 5 at ¶ 21.

21. Accordingly, an actual and justiciable controversy exists between AiDot and Stingray concerning whether AiDot infringes one or more claims of any of the Patents-In-Suit. AiDot now seeks a declaratory judgment that AiDot does not infringe the claims of the Patents-In-Suit.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '678 PATENT

22. This is a claim for declaratory judgment of non-infringement of the '678 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23. Stingray claims to own all substantial rights in the '678 Patent by assignment. Ex. 5 at ¶ 52.

24. In its E.D.Tex. Complaint, Stingray alleges that Leedarson is an alter ego of AiDot Inc. and that Leedarson directly and indirectly infringes the '678 Patent "including via the activities of Leedarson and its parent, subsidiaries, members, segments, companies, brands and/or related entities" which include "Leedarson America and AiDot." *See*, *e.g.*, Ex. 5 at ¶¶ 2-3, 8, 14, 57, and 63-64. As an example, Stingray asserts Leedarson infringes the '678 patent via the Accused Products, which include products that AiDot manufactures. Ex. 5 at ¶¶ 58 and 63-64.

25. AiDot and its Accused Products do not include, practice, induce others to practice, or contribute to others practicing at least the following limitations of the claims of the '678 Patent: "an intrusion detection method for a wireless local or metropolitan area network comprising a plurality of stations," "transmitting data between the plurality of stations using a media access layer (MAC), each of the stations having a respective MAC address associated therewith," "monitoring transmissions among the plurality of stations to detect failed attempts to authenticate MAC addresses," and "generating an intrusion alert based upon detecting a number of failed attempts to authenticate a MAC address."

26. An actual and justiciable controversy therefore exists between AiDot and Stingray regarding whether any of the Accused Products have infringed any of the asserted claims of the '678 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '678 Patent.

27. AiDot seeks a judgment declaring that AiDot does not directly or indirectly infringe any asserted claims of the '678 Patent, either literally or under the doctrine of equivalents.

## SECOND CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '678 PATENT

28. This is a claim for declaratory judgment of invalidity of the '678 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between AiDot and Stingray concerning invalidity of the '678 Patent, at least because of Stingray's infringement claims against AiDot and certain products manufactured by AiDot, as previously described.

30. One or more of the claims of the '678 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112. For example, one or more of the claims of the '678

Patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 over at least one or more prior art references.

31. Under 28 U.S.C. §§ 2201 and 2202, AiDot is entitled to a declaratory judgment that the claims of the '678 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112.

## THIRD CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '572 PATENT

32. This is a claim for declaratory judgment of non-infringement of the '572 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33. Stingray claims to own all substantial rights in the '572 Patent by assignment. Ex. 5 at ¶ 68.

34. In its E.D.Tex. Complaint, Stingray alleges that Leedarson is an alter ego of AiDot Inc. and that Leedarson directly and indirectly infringes the '572 Patent "including via the activities of Leedarson and its parent, subsidiaries, members, segments, companies, brands and/or related entities" which include "Leedarson America and AiDot." *See*, *e.g.*, Ex. 5 at ¶¶ 2-3, 8, 14, 71-75, 80-83. As an example, Stingray asserts Leedarson infringes the '572 patent via the Accused Products, which include products that AiDot manufactures. Ex. 5 at ¶¶ 74-75, 80-83.

35. AiDot and its Accused Products do not include, practice, induce others to practice, or contribute to others practicing at least the following limitations of the claims of the '572 Patent: "A secure wireless local area network (LAN) device," "a housing; a wireless transceiver carried by said housing; a medium access controller (MAC) carried by said housing; and a cryptography circuit carried by said housing and connected to said MAC," and "a cryptography circuit . . . for encrypting both address and data information for transmission by at least adding a plurality of encrypting bits to both the address and the

1  data information, and for decrypting both the address and the data information upon
2  reception."

3      36.    An actual and justiciable controversy therefore exists between AiDot and
4  Stingray regarding whether any of the Accused Products have infringed any of the asserted
5  claims of the '572 Patent. A judicial declaration is necessary to determine the parties'
6  respective rights regarding the '572 Patent.

7      37.    AiDot seeks a judgment declaring that AiDot does not directly or indirectly
8  infringe any asserted claims of the '572 Patent, either literally or under the doctrine of
9  equivalents.

## FOURTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '572 PATENT

12     38.    This is a claim for declaratory judgment of invalidity of the '572 Patent.
13 AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs
14 1 through 37 of this Complaint as if fully set forth herein.

15     39.    An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202,
16 exists between AiDot and Stingray concerning invalidity of the '572 Patent, at least
17 because of Stingray's infringement claims against AiDot and certain products
18 manufactured by AiDot, as previously described.

19     40.    One or more of the claims of the '572 Patent are invalid for failure to comply
20 with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code,
21 including §§ 101, 102, 103, and/or 112. For example, one or more of the claims of the '572
22 Patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. §
23 103 over at least one or more prior art references.

24     41.    Under 28 U.S.C. §§ 2201 and 2202, AiDot is entitled to a declaratory
25 judgment that the claims of the '572 Patent are invalid for failure to comply with one or
26 more of the requirements for patentability set forth in Title 35 of the U.S. Code, including
27 §§ 101, 102, 103, and/or 112.

# FIFTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '961 PATENT

42. This is a claim for declaratory judgment of non-infringement of the '961 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43. Stingray claims to own all substantial rights in the '961 Patent by assignment. Ex. 5 at ¶ 86.

44. In its E.D.Tex. Complaint, Stingray alleges that Leedarson is an alter ego of AiDot Inc. and that Leedarson directly and indirectly infringes the '961 Patent "including via the activities of Leedarson and its parent, subsidiaries, members, segments, companies, brands and/or related entities" which include "Leedarson America and AiDot." *See*, *e.g.*, Ex. 5 at ¶¶ 2-3, 8, 14, 89-92, 96-99. As an example, Stingray asserts Leedarson infringes the '961 patent via the Accused Products, which include products that AiDot manufactures. Ex. 5 at ¶¶ 92, 96-98.

45. AiDot and its Accused Products do not include, practice, induce others to practice, or contribute to others practicing at least the following limitations of the claims of the '961 Patent: "A method for dynamic channel allocation in a mobile ad hoc network comprising a plurality of wireless mobile nodes and a plurality of wireless communication links connecting the plurality of wireless mobile nodes together over a plurality of separate channels at different frequencies," "at each node, monitoring link performance on a first channel, link performance being based upon at least one quality of service (QoS) threshold," "at each node, scouting one or more other available separate channels at different frequencies when the monitored link performance on the first channel falls below the QoS threshold by at least switching to a second separate channel at a different frequency, broadcasting a channel activity query to determine link performance for the second separate channel, and processing replies to the channel activity query to determine the link performance for the second separate channel," and "at each node, updating

respective channel activity for the first and second separate channels at different frequencies based upon the processed replies."

46. An actual and justiciable controversy therefore exists between AiDot and Stingray regarding whether any of the Accused Products have infringed any of the asserted claims of the '961 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '961 Patent.

47. AiDot seeks a judgment declaring that AiDot does not directly or indirectly infringe any asserted claims of the '961 Patent, either literally or under the doctrine of equivalents.

## SIXTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '961 PATENT

48. This is a claim for declaratory judgment of invalidity of the '961 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49. An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between AiDot and Stingray concerning invalidity of the '961 Patent, at least because of Stingray's infringement claims against AiDot and certain products manufactured by AiDot, as previously described.

50. One or more of the claims of the '961 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112. For example, one or more of the claims of the '678 Patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 over at least one or more prior art references.

51. Under 28 U.S.C. §§ 2201 and 2202, AiDot is entitled to a declaratory judgment that the claims of the '961 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112.

## SEVENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '126 PATENT

52. This is a claim for declaratory judgment of non-infringement of the '126 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Stingray claims to own all substantial rights in the '126 Patent by assignment. Ex. 5 at ¶ 102.

54. In its E.D.Tex. Complaint, Stingray alleges that Leedarson is an alter ego of AiDot Inc. and that Leedarson directly and indirectly infringes the '126 Patent "including via the activities of Leedarson and its parent, subsidiaries, members, segments, companies, brands and/or related entities" which include "Leedarson America and AiDot." *See*, *e.g.*, Ex. 5 at ¶¶ 2-3, 8, 14, 105-108, 112-115. As an example, Stingray asserts Leedarson infringes the '961 patent via the Accused Products, which include products that AiDot manufactures. Ex. 5 at ¶¶ 108, 113-114.

55. AiDot and its Accused Products do not include, practice, induce others to practice, or contribute to others practicing at least the following limitations of the claims of the '126 Patent: "A secure wireless local area network (LAN) device comprising," "a housing; a wireless transceiver carried by said housing; a media access controller (MAC) carried by said housing; and a cryptography circuit carried by said housing and connected to said MAC and said wireless transceiver," and "said cryptography circuit comprising at least one volatile memory for storing the cryptography information, and a battery for maintaining the cryptography information in said at least one volatile memory."

56. An actual and justiciable controversy therefore exists between AiDot and Stingray regarding whether any of the Accused Products have infringed any of the asserted claims of the '126 Patent. A judicial declaration is necessary to determine the parties' respective rights regarding the '126 Patent.

57.　AiDot seeks a judgment declaring that AiDot does not directly or indirectly infringe any asserted claims of the '126 Patent, either literally or under the doctrine of equivalents.

## EIGHTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '126 PATENT

58.　This is a claim for declaratory judgment of invalidity of the '678 Patent. AiDot hereby restates and incorporates by reference the allegations set forth in paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59.　An actual controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between AiDot and Stingray concerning invalidity of the '126 Patent, at least because of Stingray's infringement claims against AiDot and certain products manufactured by AiDot, as previously described.

60.　One or more of the claims of the '126 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112. For example, one or more of the claims of the '126 Patent are invalid as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 over at least one or more prior art references.

61.　Under 28 U.S.C. §§ 2201 and 2202, AiDot is entitled to a declaratory judgment that the claims of the '126 Patent are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 101, 102, 103, and/or 112.

## PRAYER FOR RELIEF

WHEREFORE, AiDot prays for judgment as follows:

A.　Declaring that AiDot does not directly or indirectly infringe any claim of the '678 Patent, either literally or under the doctrine of equivalents;

B.　Declaring that the claims of the '678 Patent are invalid or unenforceable;

C.　Declaring that AiDot does not directly or indirectly infringe any claim of the '572 Patent, either literally or under the doctrine of equivalents;

**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL**

D. Declaring that the claims of the '572 Patent are invalid or unenforceable;

E. Declaring that AiDot does not directly or indirectly infringe any claim of the '961 Patent, either literally or under the doctrine of equivalents;

F. Declaring that the claims of the '961 Patent are invalid or unenforceable;

G. Declaring that AiDot does not directly or indirectly infringe any claim of the '126 Patent, either literally or under the doctrine of equivalents;

H. Declaring that the claims of the '126 Patent are invalid or unenforceable;

I. Declaring that judgment be entered in favor of AiDot and against Stingray on AiDot's claims;

J. Preliminarily and permanently enjoining Stingray from asserting that AiDot or its officers, agents, representatives, stockholders, and/or customers infringe any of the claims of Patents-In-Suit;

K. Preliminarily and permanently enjoining Stingray from bringing suit against AiDot or its officers, agents, representatives, stockholders, and/or customers, for infringement of any claims of the Patents-In-Suit;

L. Order that this case is "exceptional" pursuant to 35 U.S.C. § 285 entitling AiDot to an award of its reasonable and necessary attorneys' fees, expenses, and costs, and pre-judgment interest thereon;

M. Order awarding AiDot its costs of suit incurred in this action; and

N. Granting to AiDot such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 3-6, AiDot demands a jury trial on all issues and claims so triable.

Dated: November 25, 2024

**STEPTOE LLP**

By: *(signature)*

Robyn C. Crowther
John Caracappa (pro hac vice to be filed)
Stanley Kuo (pro hac vice to be filed)
Katherine Cappaert (pro hac vice to be filed)
Heather Hildreth (pro hac vice to be filed)
Attorneys for Plaintiffs,
AIDOT INC. AND SHENZHEN AIDOT IOT TECHNOLOGY CO., LTD.

**COMPLAINT FOR DECLARATORY JUDGMENT; DEMAND FOR JURY TRIAL**